IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARSHA MECHELLE JOHNSON,

*Plaintiff*,

v.

Civil Action No. ELH-13-3798

SECTEK, INC.,

*Defendant*.

**MEMORANDUM**

In an Amended Complaint, ECF 15, plaintiff Marsha Mechelle Johnson, who was then

*pro se*, alleged that her former employer, SecTek, Inc. ("SecTek"), defendant,[1] terminated her

employment as an "armed security guard" on the basis of her disability, *id*. at 4, in violation of

the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111 *et seq*. *Id*. at 5.  The

Plaintiff identified her disability as a "medical condition" for which she was taking medication,

and indicated that the medication made her "sleepy."  *Id.* at 2-4.  The Amended Complaint

contains one "cause of action." *Id.* at 5.

Johnson first filed suit against SecTek in December 2013, in a short, handwritten

Complaint.  ECF 1.  SecTek filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure

to state a claim, ECF 8, along with a memorandum, ECF 8-1, and a copy of the Charge of

Discrimination plaintiff submitted to the Equal Employment Opportunity Commission

("EEOC").  *See* ECF 8-3 ("EEOC Charge").[2]  Johnson responded with a memorandum to the

---

[1] In her Amended Complaint, plaintiff spells defendant's name as "SecTec, Inc." *E.g.*,
ECF 15 at 1.  However, in its submissions, defendant identifies itself as "SecTek, Inc." *E.g.*,
ECF 16-1.

[2] Plaintiff has never disputed the authenticity of this document.

Court that outlined additional facts supporting her allegations of discrimination, ECF 9, and also submitted four exhibits:  1) a decision from the Social Security Administration ("SSA") on Johnson's post-termination application for Disability Insurance Benefits and Supplemental Security Income, ECF 9-1 (sealed); 2) a Right to Sue Letter issued by the EEOC, ECF 9-2; 3) a letter from the EEOC explaining its decision to close Johnson's case, ECF 9-3; and 4) a photograph that, according to Johnson, shows a coworker asleep on the job.  ECF 9-4.  I granted defendant's first motion to dismiss, *see* ECF 11 (Memorandum); ECF 12 (Order), but with leave for plaintiff to amend the Complaint to include, *inter alia*, the facts she alleged in her response, ECF 9, to defendant's motion.  ECF 8.

Johnson filed her Amended Complaint in May 2014.  ECF 15.  As noted, plaintiff was self-represented at that time.  In June 2014, Defendant filed a motion to dismiss the Amended Complaint, under Fed. R. Civ. P. 12(b)(6), for failure to state a claim.  *See* ECF 16, "Motion to Dismiss"; memorandum in support, ECF 16-1; and exhibits relating to SSA disability benefit requirements, ECF 16-3, 16-4, 16-5.  With defendant's consent, the Court granted plaintiff two extensions of time in which to respond to defendant's motion.  ECF 19, 21 (Orders).  During that time, plaintiff obtained counsel.  *See* ECF 25 (filing signed by counsel); ECF 28 (notice of counsel's appearance).

On July 11, 2014, plaintiff, through counsel, filed an opposition to defendant's Motion to Dismiss.  ECF 25 ("Opposition").  On July 14, plaintiff filed a "Motion for Leave to File the Second Amended Complaint," ECF 30 ("Motion to Amend"), along with a copy of the proposed Second Amended Complaint.  ECF 30-2.  Defendant replied to plaintiff's Opposition ("Reply,"

ECF 31), and also opposed plaintiff's Motion to Amend (ECF 32), to which plaintiff replied. ECF 35.

The motions have been fully briefed, and no hearing is necessary to resolve them. *See* Local Rule 105.6. For the reasons that follow, I will deny plaintiff's Motion to Amend (ECF 30) as well as defendant's Motion to Dismiss (ECF 16).

**Factual Background**

In her Amended Complaint, Johnson alleged that she was employed by SecTek as an "armed security guard." ECF 15 ¶ 10. She stated: "Throughout my tenure with SecTec, I had excellent performance reviews. I never received a disciplinary action report. I was never given any warnings. I was a model SecTec employee." *Id.* ¶ 6.

Further, Johnson asserted that she has a "medical condition" but did not identify the condition in her suit. *E.g.*, *id.* ¶ 5. She stated that she took medication for that condition, and she identified the medication, *id.* ¶ 3, but she did not say when she began taking that medication or when, or if, she stopped taking it. *Id.* ¶ 5. She indicated that the medication had an "impact" on her work, and that "break time" and "other work shifts … would have ameliorated the impact of [her] medication on [her] work." *Id.* ¶ 9. She also stated that her "on-site SecTec colleagues … were aware" of her "disability" and the medication she took, but that "members of the corporate office … apparently were not aware of it." *Id.* ¶ 4.

According to plaintiff, on February 14, 2012, she had a meeting with three persons who appear to be coworkers and with "Jack Johnson, a representative of Defendant SecTec from Defendant's corporate office." *Id.* ¶ 1. Mr. Johnson presented plaintiff with photographs of plaintiff allegedly asleep at her post. *Id.* ¶ 3. "Plaintiff, in response, explained to Mr. Johnson

that she … had taken medication for a disability and that the medication had made Plaintiff sleepy." *Id*. ¶ 3.  Plaintiff also told Mr. Johnson the name of the medication.  *Id*.  Plaintiff "was allowed to return" to her post after the meeting and she worked again the next day, February 15, as well on February 16, 2012.  *Id*. ¶ 5.  However, on February 17, 2012, SecTek fired plaintiff.  *Id*.  Plaintiff alleged:  "[O]n February 17, 2012, I was fired from my position when SecTec's corporate office personnel realized what the medical condition is for which I was taking medication." *Id*.

Plaintiff asserted that she was fired because SecTek's "corporate level officers … ascertained the nature of [her] underlying disabling condition between February 14, 2012 and February 17, 2012 from [her] disclosure to SecTec corporate rep Johnson on February 14 of the medication [she] was taking, and they reacted against that condition due to prejudice."  *Id*. ¶ 10.  She identified by name other SecTek employees "who did not have any known disabilities" who were caught "sleeping at their posts" but were not fired.  *Id*. ¶ 7.  She added: "In fact, these persons have been promoted since then."  *Id*.  She also pointed out that SecTek "purports to have a graduated scheme" of discipline, but that she was not "offered" any "graduated response."  *Id*. ¶ 8.

In her proposed Second Amended Complaint, plaintiff seeks to add a second "cause of action," alleging that SecTek violated the ADA by failing to grant plaintiff's request for reasonable accommodations of her disability.  ECF 30-2 at 6-7.  She makes no mention of having filed a Charge of Discrimination with the EEOC for failure to accommodate, or of having otherwise exhausted her claim at the administrative level.  *See generally* ECF 30-2.

Plaintiff also proposes the addition of assorted factual allegations in support of her discriminatory discharge claim in her first cause of action.  *See* ECF 30-2 ¶¶ 6, 7, 10, 12, 13, 16. In her reply in support of her Motion to Amend, plaintiff explains that "the amendments, at least in part if not in their entirety, implicitly were suggested by Defendant itself in its Motion to Dismiss the Amended Complaint."  ECF 35 at 2.

Additional facts are included in the Discussion.

### Discussion

Because granting the Motion to Amend would render moot the Motion to Dismiss, I will consider first the Motion to Amend.  *See*, *e.g.*, *Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.'") (citations omitted).

### A. Motion to Amend

Fed. R. Civ. P. 15(a)(2) instructs that courts should "freely" grant leave to amend pleadings "when justice so requires," and commits the matter to the discretion of the district court.  *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011).  A district court may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Laber v. Harvey,* 438 F.3d 404, 426–29 (4th Cir. 2006) (en banc).

"Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: '[A] district court may deny leave if amending the

complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules.'" *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citations omitted)).  For example, an amendment "would be futile if the complaint, as amended, would not withstand a motion to dismiss." *Elrod v. Busch Entm't Corp.*, 479 F. App'x 550, 551 (4th Cir. 2012) (per curiam) (citing *Katyle*, 637 F.3d at 471); *see also Dickson v. Microsoft Corp.*, 309 F.3d 193, 200 (4th Cir. 2002) (noting district court denied leave to amend complaint "on the ground of futility" because the proposed amendments "failed to state a claim upon which relief could be granted," and affirming denial and dismissal).

Here, the addition of a claim for failure to accommodate would be futile because, as defendant argues, ECF 32 at 5-7, it is clear from the proposed Second Amended Complaint and plaintiff's EEOC Charge that she has failed to exhaust administratively this claim.

"The ADA makes it unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'" *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) (quoting 42 U.S.C. § 12112(a) (2012)).  "The Act prohibits covered employers from discharging qualified employees because they are disabled." *Summers*, 740 F.3d at 328.  And, "[s]uch unlawful discrimination can include the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee … .'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)) (alterations in *Wilson*).

"Modeled after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the ADA incorporates that statute's enforcement procedures, *id.* § 12117(a), including the

requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court, *see id.* § 2000e–5(b), (f)(1)." *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012).   The administrative claims process is "'an integral part'" of the enforcement scheme Congress set out in Title VII, *see id.* (quoting *Chacko v. Patuxent Inst.,* 429 F.3d 505, 510 (4th Cir. 2005), and, by incorporation, in the ADA.   *See Sydnor*, 681 F.3d at 593.   "Allowing [the EEOC] first crack at these cases respects Congress's intent 'to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Id.* (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).

In keeping with Congressional intent, the Fourth Circuit has "held that the 'scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents.'" *Sydnor*, 681 F.3d at 593 (quoting *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009)).   A claim is outside the scope of plaintiff's administrative charge when the "'charges reference different time frames, actors, and discriminatory conduct than the central factual allegations'" in the complaint. *Sydnor*, 681 F.3d at 593 (quoting *Chacko*, 429 F.3d at 506).   However, "the exhaustion requirement should not become a tripwire for hapless plaintiffs."   *Sydnor*, 681 F.3d at 594. Therefore, "so long as 'a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation,' she 'may advance such claims in her subsequent civil suit.'" *Id.* (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)).

The Fourth Circuit has found that the plaintiffs failed to exhaust where the complaint alleged a violation on a forbidden basis (*i.e.*, race or sex) not alleged in any EEOC Charge, and

where the complaint alleged a kind of liability not alleged in any EEOC Charge. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir. 2002) (plaintiff failed to exhaust claim for sex discrimination because EEOC Charge alleged only racial discrimination); *Jones v. Calvert Grp., Ltd.,* 551 F.3d 297, 301 (4th Cir. 2009) (plaintiff failed to exhaust claim for racial discrimination because EEOC Charge alleged only retaliation).

On the other hand, where allegations in the complaint match the discriminatory bases and kinds of liability alleged in an EEOC Charge, the Court has found that the plaintiffs did exhaust claims for related conduct or requests that were not included in the EEOC Charge. In *Chisholm v. United States Postal Services*, 665 F.2d 482, 491 (4th Cir. 1981), for example, the Court "found exhaustion where both the administrative complaint and formal litigation concerned 'discriminat[ion] in promotions' but involved different aspects of the 'promotional system' … ." *Sydnor*, 681 F.3d at 594 (quoting *Chisholm*, 665 F.2d at 491). Similarly, in *Smith*, 202 F.3d at 248, the Court found exhaustion "where both the EEOC charge and the complaint included claims of retaliation by the same actor, but involved different retaliatory conduct." *Sydnor*, 681 F.3d at 594. And, in *Sydnor*, 681 F.3d at 594-95, the Court held that plaintiff had exhausted her claim for a particular kind of accommodation under the ADA, even though her EEOC Charge did not mention that she had requested that particular kind of accommodation. The Court reasoned that Sydnor's EEOC Charge "claimed what her suit now claims—that she had 'been discriminated against based on [her] disability' by being 'denied a reasonable accommodation;'" that the allegations in both "involved the same place of work and the same actor;" and that both "focused on the same type of discrimination," *i.e.*, "that she 'was denied a reasonable accommodation.'" *Id.* (quoting record) (alterations in *Sydnor*). It concluded: "When taken

together, the similarities between Sydnor's administrative and judicial narratives make clear that
the [defendant] was afforded ample notice of the allegations against it." *Id.* at 595.

Here, plaintiff's EEOC Charge contains no express reference to a claim of failure to
accommodate, nor does it allege that plaintiff ever requested any kind of accommodation.  ECF
8-3 (EEOC Charge).  In full, the narrative part of the Charge states, *id.* at 2:

> I was hired on April 4, 2006, as an Armed Security officer for Sectek Inc.  On
> February 14, 2012, I was reprimanded by a representative from Sectek Inc's [sic]
> corporate office for being asleep on the job.  I told the representative that I was on
> medication that made me drowsy.  On February 18, 2012, I received a phone call
> from my supervisor, Tony Smith, informing me that I had been discharged.
>
> I believe that I have been discriminated against (discharged), based upon my
> disability, in violation of the Americans with Disabilities Act of 1990, as
> amended.

As noted, in its Opposition to plaintiff's Motion to Amend, SecTek argues that
plaintiff failed to exhaust administratively the allegations in the second cause of action,
and therefore amendment to include that claim would be futile.  ECF 32 at 5-7.  As also
noted, plaintiff alleged in her Amended Complaint that "accommodations" such as "break
time" and "other work shifts" would have "ameliorated the impact of [her] medication on
[her] work." *Id.* ¶ 9.  In her proposed Second Amended Complaint, plaintiff seeks to add:
"Defendant SecTec had notice of Plaintiff's disability when it discriminated against and
failed to accommodate Plaintiff but instead terminated her employment."  ECF 30-2 at
¶ 22.

In her reply in support of her Motion to Amend, plaintiff responded to defendant's
exhaustion argument, in relevant part, as follows, ECF 35 at 6:

> The point at which break time and scheduling matters become a disability
> accommodations issue is difficult to ascertain.  It appears that here, the process

"conflated" routine breaks and work scheduling issues for any armed security guard, on the one hand, with break time and work scheduling accommodations for a handicapped guard, such as Plaintiff, on the other.

Logic suggests this "conflation" should be treated as Plaintiff having exhausted her administrative remedies with respect to relatively routine or close to routine accommodations of her disability which could be effectuated through work schedule adjustments. Thus, in this particular case it appears that Plaintiff's administrative remedies for these aforementioned types of accommodations were adequately addressed in the administrative process for purposes of concluding that Plaintiff is entitled to raise a failure to accommodate claim here that is consistent with this evaluation ….

Whether or not it is "difficult to ascertain" the point at which break requests become an "accommodations issue," it is not difficult to see that this issue was never expressly raised before the EEOC. *See* ECF 8-3. And, even if the reply is interpreted as an argument by plaintiff that the failure to accommodate claim is "reasonably related" to her discriminatory discharge claim, *see Sydnor*, 681 F.3d at 594, I do not agree.

As discussed, the Fourth Circuit has repeatedly determined that a plaintiff who alleges in a suit a basis or form of discrimination that differs from what was alleged in an EEOC charge has failed to exhaust that particular claim. *See Bryant*, 288 F.3d at 132-33; *Jones*, 551 F.3d at 301. This is one of those cases.

In her EEOC Charge, plaintiff alleged that SecTek unlawfully discriminated on the basis of plaintiff's disability when it discharged her. ECF 8-3. Plaintiff now seeks to add a claim with the same basis of discrimination as that alleged in her EEOC Charge (disability), but with a new form of discrimination (failure to accommodate), not alleged in her EEOC Charge. Moreover, so far as the Court can tell, this claim may involve different actors and different timeframes than those referenced in plaintiff's EEOC Charge. Indeed, in light of the Court's continued inability to make out the factual basis of plaintiff's failure to accommodate claim, it seems highly unlikely

that the defendant "was afforded ample notice of the allegations against it" on this point, in any

forum.  *See Sydnor*, 681 F.3d at 595.

My conclusion is buttressed by similar holdings by fellow judges in this District, and by

the similar holdings of other circuit courts of appeal.  *See, e.g.*, *Bennett v. Kaiser Permanente*,

931 F. Supp. 2d 697, 704 (D. Md. 2013) (holding failure to accommodate charge was not

reasonably related to EEOC charges where EEOC charge said, "I believe I have been

discriminated against ... with regard to discipline and discharge based on my ... disability")

(alterations in *Bennett*); *Mayers v. Washington Adventist Hosp.*, 131 F. Supp. 2d 743, 747 (D.

Md.), *aff'd*, 22 F. App'x 158 (4th Cir. 2001); *see also Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1187

(10th Cir. 2007) (internal citations omitted) ("[T]he text of the charge does not contain facts that

would prompt an investigation of Mr. Jones's claim that UPS failed to accommodate him.

Indeed, facts related to the alleged act of discrimination—UPS's failure to consider

accommodating his perceived disability—are absent from the charge.  Because an investigation

into whether UPS failed to accommodate Mr. Jones cannot 'reasonably be expected to follow the

charge,' he has failed to exhaust his administrative remedies with respect to this claim."); *Jones

v. Sumser Ret. Vill.*, 209 F.3d 851, 853 (6th Cir. 2000) ("Jones's February 28, 1994, charge did

not explicitly allege that Sumser failed to accommodate her disability.  Furthermore, such a

claim does not reasonably grow out of the facts and claims she asserted.  The written charge

specifically alleged only a termination claim.  Nothing in the charge pointed to any claim other

than an improper refusal to keep Jones's job open while she recovered. … A termination claim

differs in kind and date from an accommodation claim.").

Accordingly, plaintiff has failed to exhaust the failure to accommodate claim proposed as her second cause of action. As a result, amendment of the complaint to include this claim would be futile.

I will also deny plaintiff leave to include the remainder of her proposed changes, *i.e.*, the additional statements in support of her first cause of action. In the first instance, justice does not require that I grant plaintiff leave to add the remaining allegations, *see* Fed. R. Civ. P. 15(a)(2), because I conclude that the operative pleading survives a Motion to Dismiss. Thus, amendment would unnecessarily delay progress in this case. Moreover, the proposed additions are almost entirely redundant, conclusory, and/or immaterial. *See*, *e.g.*, ECF 30-2 ¶ 7 ("Plaintiff never admitted she was asleep."); *id*. ¶ 12 ("Plaintiff is a qualified handicapped person for purposes of the ADA. Plaintiff can perform functions of a security guard with or without reasonable accommodations."); *id.* ¶ 14 ("Plaintiff's totally disabled status is not inconsistent with her being a qualified handicapped person for purposes of the [ADA] because the medical opinion upon which the determination is based did not consider accommodations of Plaintiff's position in light of her then recent termination by SecTec.").

## B. Motion to Dismiss

### 1. Standard of Review

Defendant's Motion is predicated on Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). Rule 8 provides that a complaint must contain

a "short and plain statement of the claim showing that the pleader is entitled to relief."  The

purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds"

for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 n.3 (2007); *see also*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Generally, a court's consideration is confined to facts alleged in the operative pleading.

A court "may not consider any documents that are outside of the complaint, or not expressly

incorporated therein." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).

But, a court may properly consider documents "attached or incorporated into the complaint," as

well as documents attached to the defendant's motion, "so long as they are integral to the

complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009);

*see also Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *E.I. du Pont*

*de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).  To be "integral," a

document must be one "that by its 'very existence, *and not the mere information it contains*,

gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows*

*Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original);

*see also New Beckley Mining Corp. v. UMWA*, 18 F.3d 1161, 1164 (4th Cir.1994) (holding

district court did not err in relying on document that plaintiff referred to in its complaint to

justify cause of action).

A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).

*Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a

complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v.*

*City of Shelby*, —— U.S. ——, 135 S. Ct. 346, 346 (2014) (per curiam).  But, the rule demands

more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556.  In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Id.* at 570; *see Iqbal*, 556 U.S. at 684; *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

In reviewing a Rule 12(b)(6) a motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, —— U.S. ——, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385–86 (4th Cir. 2009), *cert. denied*, 559 U.S. 991 (2010).  However, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient.  *Twombly*, 550 U.S. at 555.  Moreover, the court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe*, 579 F.3d at 385-86.

A Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679 (citation omitted).  "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the

legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, —— U.S. ——, 132 S.Ct. 1960 (2012). "'Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted); *accord Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201-02 (10th Cir. 2011) ("Dismissal is appropriate if the law simply affords no relief.").

A motion asserting failure to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quotation marks omitted), unless such a defense can be resolved on the basis of the facts alleged in the complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear [ ] on the face of the complaint,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

## 2. Analysis

As discussed, the ADA prohibits "discrimination against a qualified individual on the basis of disability … ." 42 U.S.C. § 12112. The statute further defines "qualified individual," in relevant part, as follows: "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* at § 12111(8). "Reasonable accommodation" "may include" the following, *id.* at § 12111(9):

    (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
    (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

"Disability" means: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." *Id.* at § 12102(1). One is "regarded as having such an impairment" if "the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* at § 12102(3).

Under the ADA, a "plaintiff establishes a prima facie case of wrongful discharge," *e.g. Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 947 (4th Cir. 2013), if plaintiff "produce[s] evidence sufficient to demonstrate that (1) he 'was a qualified individual with a disability'; (2) he 'was discharged'; (3) he 'was fulfilling h[is] employer's legitimate expectations at the time of discharge'; and (4) 'the circumstances of h[is] discharge raise a reasonable inference of unlawful discrimination.'" *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (quoting *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004)) (alterations in *Reynolds*). However, to survive a motion to dismiss under Rule 12(b)(6), plaintiff is not required to establish a "prima facie case," or to mechanically recite its elements. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case … [familiar in employment discrimination claims] is an evidentiary standard, not a pleading requirement."). Rather, "the

ordinary rules for assessing the sufficiency of a complaint apply." *Id*. at 511.  Thus, as with any

challenge to a pleading under Fed. R. Civ. P. 12(b)(6), plaintiff need only put forth sufficient

facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Here, defendant argues that the Amended Complaint should be dismissed, under Fed. R.

Civ. P. 12(b)(6), because it fails to state a claim for violation of the ADA.  Defendant recites the

elements of the "prima facie case," and argues that plaintiff has "not alleged she is a 'qualified

individual with a disability' within the meaning of the ADA or that she met SecTek's legitimate

expectations of job performance at the time of her discharge."  ECF 16-1 at 3.  Defendant relies

almost entirely on exhibits or filings to support its argument, rather than on the Amended

Complaint.  *See* ECF 16-1 at 4-8 (discussing SSA-related exhibits and filings).  Defendant's

reliance on those exhibits is misplaced in the posture of this case.  *See Clatterbuck*, 708 F.3d at

557.  And, defendant's arguments are not persuasive.

Contrary to defendant's contention, ECF 16-1 at 3, plaintiff is not required to plead that

she met SecTek's "legitimate expectations of job performance."  This is not a statutory element

of the claim and thus is not required at the pleading stage.  *See, e.g.*, *Craddock v. Lincoln Nat.

Life Ins. Co.*, 533 F. App'x 333, 336 (4th Cir. 2013) ("To plead a claim of disability

discrimination under the ADA, a plaintiff must allege that (1) she had a disability as defined in

the ADA; (2) she was a 'qualified individual,' *i.e.*, able to perform the essential functions of her

job with or without reasonable accommodation; and (3) her employer took an adverse action

against her on account of her disability."); *Prince-Garrison v. Md. Dep't of Health & Mental

Hygiene*, 317 F. App'x 351, 353 (4th Cir. 2009) (citations omitted) ("A civil rights plaintiff need

not plead facts that constitute a prima facie case … in order to survive a motion to dismiss.

Nevertheless, the plaintiff retains the burden to allege facts sufficient to state all the elements of her claim.").

Defendant also contends that plaintiff "has not alleged that she was a 'qualified individual' with a disability nor does she plead any facts to support this critical element," ECF 16-1 at 4, and that "[t]o be a 'qualified' individual with a disability under the ADA, Plaintiff must define the essential functions of her position by showing the court which functions 'bear more than a marginal relationship to the job at issue.'" *Id*. at 7 (citation omitted). But, plaintiff is not required to use words stating that she is a "qualified individual," as defendant urges. *See Id*. at 4. Nor, at the pleading stage, does plaintiff need to "define the essential functions of her position." ECF 16-1 at 7. *See Swierkiewicz*, 534 U.S. at 510. Rather, plaintiff need only plead sufficient facts from which the Court can plausibly *infer* "that (1) she had a disability as defined in the ADA; (2) she was a 'qualified individual,' *i.e*., able to perform the essential functions of her job with or without reasonable accommodation; and (3) her employer took an adverse action against her on account of her disability." *Craddock*, 533 F. App'x at 336; *see Twombly*, 550 U.S. at 570.

Under the ADA, a person is a "qualified individual" so long as she can perform essential job functions "with or without reasonable accommodation." 42 U.S.C. § 12111(9). The Supreme Court has interpreted this to mean that a person may be a "qualified individual" even if she can perform essential functions only *with* reasonable accommodation. *See*, *e.g*., *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 393 (2002) ("The [ADA] prohibits an employer from discriminating against an 'individual with a disability' who, with 'reasonable accommodation,' can perform the essential functions of the job.").

Plaintiff alleged that, "[t]hroughout her tenure with SecTek," she had "excellent performance reviews," "never received a disciplinary action report," and "was never given any warnings."  ECF 15 ¶ 6.  Taken as true, these facts plausibly give rise to the inference that plaintiff was "able to perform the essential functions of her job with or without reasonable accommodation."  *See Tyndall v. Nat'l Educ. Centers, Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994) (noting that "'excellent' and 'good' performance evaluations" support inference that plaintiff was "qualified for her job" but affirming summary judgment where evidence showed plaintiff had attendance problems).  Even if plaintiff could only perform essential functions *with* "break time" and "other work shifts," *see* ECF 15 ¶ 9, she is not outside ADA coverage.[3]  *See Barnett*, 535 U.S. at 393.

---

[3]  I note that plaintiff's ability to perform essential functions with reasonable accommodation also does not, in and of itself, give rise to liability on the part of the employer for failure to accommodate.  "Reasonable accommodations" play two, distinct roles in the ADA scheme.  First, in order to make any claim under the ADA, a plaintiff must show that she is covered by the ADA's protections, *i.e.*, that she is a "qualified individual."  *E.g.*, *Rohan*, 375 F.3d at 287.  To do this, a plaintiff must show that she could perform the essential functions of her job "with or without accommodation."  42 U.S.C. § 12111(9).  This requirement is unrelated to a separate, second question of whether or not the employer ever actually refused to make such reasonable accommodations.  *See* 42 U.S.C. § 12112(b)(5)(A) (defining "discriminate against a qualified individual on the basis of disability" to "include," *inter alia*, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee"); *Wilson*, 717 F.3d at 345 (4th Cir. 2013) (stating elements of prima facie case for failure to accommodate and including, *inter alia*, "that the employer had notice of his disability" and "that the employer refused to make such accommodations") (citations and alterations omitted); *Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 981 (E.D. Va. 2012) (quoting *Walter v. United Airlines, Inc.*, 232 F.3d 892, 2000 WL 1587489, at *4 (4th Cir. Oct. 25, 2000) (unpublished table decision)) (dismissing failure to accommodate claim where plaintiff failed to allege she requested accommodation or that her employer's "failure to engage in an interactive process resulted in the failure to identify an appropriate accommodation for the disabled employee").

Accordingly, plaintiff has adequately alleged a claim for relief under the ADA for employment discrimination.  Therefore, defendant's Motion to Dismiss (ECF 16) is DENIED.

### Conclusion

For the foregoing reasons, I will DENY defendant's Motion to Dismiss (ECF 16) and plaintiff's Motion to Amend (ECF 30).   A separate Order follows, consistent with this Memorandum.

Date: February 4, 2015                    _____/s/_____

                                          Ellen Lipton Hollander
                                          United States District Judge